UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DARIUS THERIOT,

    Plaintiff,

v.

DUNCAN MACCLAREN et al.,

    Defendants.
_____/

Case No. 2:18-cv-102

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MacLaren and Unknown Part(y)(ies) #2, #3, and #4.

## Discussion

    I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The

events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following KCF officials: Warden Duncan MacLaren; Nurse (unknown) Russell; Correctional Officers (unknown) McGuire, (unknown) Lawson, and three unknown officers (collectively Unknown Part(y)(ies) #1); Sergeant (unknown) Beaulieu; an unknown Lieutenant (Unknown Part(y)(ies) #2); an unknown Captain (Unknown Part(y)(ies) #3); and an unknown Doctor (Unknown Part(y)(ies) #4).

Plaintiff alleges that, on June 30, 2015, he worked out in the KCF weight pit, performing multiple back exercises. Shortly after his workout, Plaintiff experienced pain in his lower back. Plaintiff took a number of pain medications during the day, but his back pain grew progressively worse. By the time of third shift, Plaintiff's pain became too severe to bear. Plaintiff advised a correctional officer in his unit (Officer McLary, who is not a Defendant). McLary called medical services and reached Defendant Nurse Russell. Plaintiff told Russell about the severity of his pain and when he began to experience it. Plaintiff indicated that the exercises he had done may have caused it. Defendant Russell expressed displeasure that Plaintiff had been doing dead lifts with weights and indicated that the pain was Plaintiff's own fault. Russell advised Plaintiff that, as a nurse, he could not give any treatment. Plaintiff explained that the pain was too excruciating to bear, despite Plaintiff having taken multiple pain relievers. Nurse Russell told Plaintiff to take more medication, to take a hot shower, and to fill out a medical kite and place it in the medical box in the chow hall.

Plaintiff followed the recommendations and took more medicine and a hot shower. At about 12:40 a.m. on July 1, 2015, Plaintiff asked another correctional officer to call health services again. The officer reached Defendant Nurse Russell. Because Plaintiff was in too much pain to come to the phone, the officer relayed Plaintiff's belief that he may have taken too many

pain medications in one day. Russell again responded that there was nothing he could do and instructed Plaintiff to complete a medical kite.

Sometime between 2:00 and 3:00 a.m., Plaintiff attempted to walk to the bathroom. He collapsed on the hallway floor and was not found for ten minutes. The inmate who found him notified officers Brown and McLary, who called for assistance. Defendant Sergeant Beaulieu, accompanied by five other officers, came to Plaintiff's floor. Defendant Beaulieu demanded that Plaintiff be removed from the hallway immediately, chastising one of the correctional officers who attempted to give Plaintiff a pillow. Beaulieu instructed the officers that, if Plaintiff had not been removed from the floor by count time at 4:30 a.m., officers should write a misconduct ticket against Plaintiff. Beaulieu and other officers ignored Plaintiff's statement that he needed to go to the hospital. A group of inmates in Plaintiff's cube carried him to the cell, but Plaintiff could not get into bed and had to lie on the floor. Defendant Beaulieu and another officer came into his cell and put a medical kite on his head, saying, "[F]ill it out . . . if you really need medical attention." (Compl., ECF No. 1, PageID.8.)

When the first-shift officer came on duty, Plaintiff informed him of his serious medical condition and asked him to call health care. The officer called, and Plaintiff was handed a pass to go to medical at 12:30 p.m., which was still five and one-half hours away. Plaintiff began to cry, at which point the officer called the yard EMS/ambulance. When the ambulance arrived, two officers carried Plaintiff down three flights of stairs. Correctional Officer Johnston drove Plaintiff to health care.

At about 7:30 a.m., a male nurse saw Plaintiff and performed a urine test. The test showed the presence of blood and extremely high levels of CPK (creatine phosphokinase) in the urine. Plaintiff was sent to another room, where the Defendant unknown doctor (Unknown

Part(y)(ies) #4) informed him that they were immediately transferring him to the hospital, because his condition was serious. The doctor, however, was less than kind, telling Plaintiff that he was to blame for his injury, because he performed weighted back exercises.

The doctor ordered that Plaintiff be sent to War Memorial Hospital in Sault Ste. Marie. Plaintiff was not transported by ambulance, however, but was taken to the hospital in a car by two prison guards, Defendants McGuire and Lawson. Plaintiff alleges that the officers did not take the shortest route and that the trip took at least 15 minutes too long.

At the hospital, Plaintiff received another urinalysis and a series of blood tests. He was immediately given pain medication and fluids. His blood pressure was extremely high, and the doctors were concerned about a heart attack or stroke. Plaintiff was moved from the emergency room to the intensive care unit. Defendants McGuire and Lawson, in deliberate indifference to Plaintiff's health, kept asking hospital personnel to move Plaintiff into a different room with another inmate, so that the prison staff could be reduced from six officers to four. The nurses finally acquiesced later the same day. Plaintiff complains that Defendants McGuire and Lawson also refused to allow Plaintiff to call his mother and refused to notify his mother themselves. Plaintiff remained hospitalized from the morning of July 1 through the late afternoon of July 5. His diagnosis was traumatic rhabdomyolysis.[1]

Plaintiff alleges that all Defendants were deliberately indifferent to Plaintiff's serious medical needs. He asserts that Defendant Warden MacLaren is liable for failing to supervise his subordinates, failing to ensure that proper practices are enforced, and failing to have sufficient health care providers on third shift. Plaintiff also alleges that Unknown Party #2, the

---

[1] Rhabdmyolysis is defined in the Merriam-Webster online dictionary as "the destruction or degeneration of muscle tissue (as from traumatic injury, excessive exertion, or stroke) accompanied by the release of breakdown products into the bloodstream and sometimes leading to acute renal failure." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/rhabdomyolysis (last visited Nov. 12, 2018).

unknown lieutenant on third shift, who is Defendant Beaulieu's superior officer, was informed by radio of Plaintiff's collapse in the hall, but he did not respond or ensure that Plaintiff was sent to the hospital. In addition, Plaintiff alleges that Unknown Party #3, the third shift captain and supervisor of both Beaulieu and Unknown Party #2, failed to ensure that his subordinates provided Plaintiff care for his serious medical needs.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendants MacLaren & Unknown Part(y)(ies) #2 and #3

Plaintiff fails to make specific factual allegations against Defendants Warden MacLaren, Unknown Lieutenant (Unknown Part(y)(ies) #2), and Unknown Captain (Unknown Part(y)(ies) #3), other than his claim that they failed to adequately supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Warden MacLaren, Unknown Lieutenant (Unknown Part(y)(ies) #2), and Unknown Captain (Unknown Part(y)(ies) #3) engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

IV.     Defendant Unknown Part(y)(ies) #4

Plaintiff alleges that the first-shift doctor (Unknown Part(y)(ies) #4) was deliberately indifferent to his serious medical needs when the doctor exhibited disapproval of Plaintiff's weightlifting, which caused the injury, and authorized that Plaintiff be transported to the hospital by car, rather than by ambulance.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied

7

"[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

8

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations against the first-shift doctor fall short of demonstrating that the doctor acted with deliberate indifference. Although the allegations may support a conclusion that Plaintiff faced a substantial risk of serious harm, Plaintiff fails to allege that the doctor was deliberately indifferent to that risk. According to Plaintiff's own allegations, as soon as the doctor reviewed the urinalysis, he ordered Plaintiff transported to the hospital. Such a rapid response cannot support a finding of deliberate indifference. The response indicates that the doctor appreciated the seriousness of the risk to Plaintiff and took immediate action to address that risk.

Nurse Russell's suggestion that Plaintiff's doing dead weights was not callous— lifting too much weight or incorrectly lifting the weights can cause back problems, and incorrect lifting causing those problems would be Plaintiff's "own fault." Plaintiff, himself, alleged that the exercises he had done could have caused the pain. Even if Russell's remarks were made, the use of harassing or degrading language by a prison official, even if unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Rude comments therefore most certainly fail to demonstrate deliberate indifference.

Further, Plaintiff fails to state an Eighth Amendment claim based on the doctor's decision to have Plaintiff transported to the hospital by car, rather than by ambulance. At most, transport by car left Plaintiff untreated for 45 minutes during the transport period, arguably longer than if an ambulance had been called. However, because Plaintiff alleges that Defendants McGuire and Lawson drove slowly and took an inefficient route to the hospital (taking an extra 15 minutes), the doctor would have expected no more than a half-hour delay in reaching the hospital. Such an anticipated delay is reasonable on its face. *Blackmore*, 390 F.3d at 900 (requiring a plaintiff who

10

alleges delay in treatment "to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame"). While Plaintiff successfully alleges that he needed medical treatment, he fails to allege facts suggesting that Defendant Unknown Part(y)(ies) #4 failed to address his need within a reasonable time.

For all of these reasons, Plaintiff fails to state a claim against Defendant Unknown Part(y)(ies) #4.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MacLaren and Unknown Part(y)(ies) #2, #3, and #4 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated: November 29, 2018                    /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE