UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARIUS THERIOT #778606,                    Case No. 2:18-cv-00102

              Plaintiff,              Hon. Gordon J. Quist
                                     U.S. District Judge

    v.

DUNCAN MACCLAREN, et al.,

              Defendants.
_____/

## **<u>REPORT AND RECOMMENDATION</u>**

## I.    Introduction

This is a civil rights action brought by state prisoner Darius Theriot #778606 pursuant to 42 U.S.C. § 1983.  Theriot alleges that his rights under the Eighth Amendment were violated while he was incarcerated at Kinross Correctional Facility (KCF).  Theriot alleges that Defendants were deliberately indifferent to a pain he felt after weightlifting.  This pain was later identified as a symptom of traumatic rhabdomyolysis.

The seven remaining Defendants are Michigan Department of Corrections (MDOC) employees.  Only four of these Defendants have been served with Theriot's verified complaint.[1]  Those four Defendants are Nurse Russell DeFreitas, Sergeant (Sgt.) Dale Beaulieu, Corrections Officer (CO) Wayne McGuire, and CO M. Lawson.

---

[1]    The three unserved Defendants are unknown Corrections Officers.  Pursuant to Fed. R. Civ. P. 4(m), the undersigned recommends that those three unknown

On September 6, 2019, Defendants moved for summary judgment under Fed. R. Civ. P. 56(a).  (ECF No. 50, PageID.265; ECF No. 51, PageID.267.)  They argue (1) that Defendants' claims fail to rise to the level of an Eighth Amendment deliberate indifference claim and (2) that Theriot's claims are barred by the doctrine of qualified immunity.

On October 7, 2019, Theriot responded to Defendants' motion for summary judgment.  (ECF No. 55, PageID.397; ECF No. 56, PageID.400.)  Theriot asserts that there is a genuine issue of material fact concerning whether Defendants knew there existed a serious risk of injury.  Defendants have not replied.

The undersigned concludes that there are no genuine issue of material fact regarding Theriot's Eighth Amendment claims.   In addition, the undersigned concludes that Defendants DeFreitas, Beaulieu, McGuire and Lawson are entitled to qualified immunity.  Accordingly, the undersigned respectfully recommends that the Court (1) grant Defendants' motion for summary judgment and (2) dismiss Theriot's remaining claims against the unserved Defendants with prejudice.

## II.    Additional Relevant Procedural History

Theriot filed this action on July 2, 2018.  (ECF No. 1, PageID.1.)  On November 29, 2018, the Court issued a screening opinion and order that dismissed Defendants

---

Defendants be dismissed without prejudice because they have not been served with Theriot's verified complaint (ECF No. 1, PageID.1) or his amended verified complaint (ECF No. 68, PageID.476), which was filed on January 20, 2020.

MacClauren, Unknown Party 2, Unknown Party 3, and Unknown Party 4 because Theriot failed to state a claim against them.  (ECF No. 12, PageID.122; ECF No. 13, PageID.133.)  The case was subsequently referred to the Prisoner Early Mediation (PEM) program, but failed to settle.  (ECF No. 14, PageID.134; ECF No. 17, PageID.142.)

On January 6, 2020, Theriot filed an amended complaint with this Court's permission.  (ECF No. 68, PageID.476.)  The amended complaint corrected the names of some of the previously-identified Defendants.

## III.   Summary of Theriot's Allegations

Theriot's deliberate indifference claims arise out of Defendants' conduct concerning a single back injury.  On June 30, 2015, Theriot noticed pain in his back after working out.  Theriot took pain medications throughout the day and eventually obtained permission from a CO to call healthcare.  (ECF No. 68, PageID.480.)  Theriot spoke with Defendant DeFreitas, a nurse, around 1:00 A.M. on July 1, 2015.[2]  (*Id.*, PageID.481.)  DeFreitas allegedly advised Theriot that DeFreitas, as a nurse, could not give any medical treatment.  DeFreitas instructed Theriot to continue taking pain medicines, use a hot compress, and fill out a medical kite if his pain worsened.  (*Id.*)

---

[2]     It should be noted that there is some discrepancy as to when the phone call took place.  In DeFreitas's affidavit, he swore that the phone call took place on June 30, 2015 at around 1:10 A.M.  (ECF No. 51-1, PageID.289.)  Based on the health care phone log (ECF No. 51-2, PageID.293) and Beaulieu's affidavit (ECF No. 51-3, PageID.296), DeFreitas may have confused the evening of June 30, 2015 with the early morning hours of July 1, 2015.

Sometime between 2:00 and 3:30 A.M., Theriot allegedly collapsed in the hallway while attempting to walk to the bathroom.  (*Id.*, PageID.482.)  Defendant Beaulieu, along with five other COs, eventually discovered Theriot on the floor.  The arriving COs were briefed on Theriot's injury, continued pain, and Theriot's conversations with DeFreitas.  Citing safety concerns, Beaulieu declined to bring Theriot a pillow and remain laying on the floor.  Instead, Beaulieu ordered Theriot back to his bed and threatened to write him up for misconduct if he did not go back. (*Id.*)  Theriot alleges that Beaulieu ignored his need for medical attention during this time.  (*Id.*, PageID.488.)

Once Theriot was back in his cell, one of the COs placed a medical kite on Theriot's head and told him to fill it out if he needed medical attention.  (*Id.*, PageID.483.)  First-shift COs came in at about 7:00 A.M., and made rounds.  Theriot told a CO about his condition and the CO called healthcare.  The CO secured a pass for Theriot to go to medical at 12:30 P.M.  Theriot's pain worsened, and he went to medical at 7:30 A.M.  (*Id.*)  A healthcare official ran a urine test that showed blood and extremely high levels of CPK (creatine phosphokinase).  The healthcare official told Theriot that he was being transferred to War Memorial Hospital because his condition was serious.  (*Id.*)  Theriot was transported to the hospital by Defendants McGuire and Lawson.  Theriot alleges that McGuire and Lawson did not take the shortest, most direct route, and that the transport took at least fifteen minutes longer than it should have.  (*Id.*, PageID.484.)  Theriot alleges that he thinks McGuire and

Lawson took this slower path to see "some property item" on the way.  (ECF No. 56-6, PageID.438.)

Upon arriving at the hospital, healthcare officials administered several tests and diagnosed Theriot with traumatic rhabdomyolysis.[3]  (ECF No. 68, PageID.484.) The hospital gave Theriot pain medication and fluids and ultimately moved him into the intensive care unit.  (*Id.*)  Theriot was then moved into another room with another inmate-patient, at the request of Defendants McGuire and Lawson, in order to reduce the personnel needed to supervise the patients.  (*Id.*)  Theriot requested to call his mother and have her notified of his condition but McGuire and Lawson allegedly refused.  (*Id.*)  Theriot remained hospitalized from July 1st to July 5th.  He alleges that the KCF transport ride back to the prison on July 5th took less time than his ride to the prison on July 1st did.  (*Id.*, PageID.485)

Theriot alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  The table below lists Theriot's claims and a summary of the alleged facts supporting the claims.

| Count | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|-------|-----------|-------|-----------------------------------|--------------------|
| 1 | DeFreitas | 8th Amendment Deliberate Indifference | 6/30/2015 – 7/1/2015 | Theriot alleges Defendant DeFreitas did not take his injury seriously enough by not administering further medical treatment and not sending |

---

[3]     Traumatic rhabdomyolysis is a syndrome that involves dead muscle fibers entering the bloodstream and the kidneys being unable to filter out those dead fibers. (WebMD, *Rhabdomyolysis*, WWW.WEBMD.COM, https://www.webmd.com/a-to-z-guides/rhabdomyolysis-symptoms-causes-treatments#1 (last visited Aug. 14, 2020). The inability to filter out the dead fibers may result in kidney failure and death.  *Id.* Moreover, the fibers died because of a direct or indirect muscle injury.  *Id.*

| Count | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | | | him immediately to the hospital. (ECF No. 56, PageID.404.) |
| 2 | Beaulieu | 8th Amendment Deliberate Indifference | 7/1/2015 | Theriot alleges Defendant Beaulieu did not take the proper medical precautions upon discovering Theriot on the floor and should have sent Theriot to the hospital instead of ordering him back to his bunk. (ECF No. 56, PageID.405.) |
| 3 | McGuire | 8th Amendment Deliberate Indifference | 7/1/2015 – 7/5/2015 | Theriot alleges Defendant McGuire did not take the fastest route to the hospital, which added fifteen minutes to the trip, and that McGuire also prohibited Theriot from calling his mother once at the hospital to notify her of his condition. (ECF No. 56, PageID.406.) |
| 4 | Lawson | 8th Amendment Deliberate Indifference | 7/1/2015 – 7/5/2015 | Theriot alleges Defendant Lawson did not take the fastest route to the hospital, which added fifteen minutes to the trip, and that Lawson also prohibited Theriot from calling his mother once at the hospital to notify her of his condition. (ECF No. 56, PageID.406.) |

## IV.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.  Eighth Amendment Deliberate Indifference Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals

elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The

8

subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721

(6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

10

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

## VI.    Theriot's Claim Against DeFreitas

As noted above, Theriot claims that DeFreitas was deliberately indifferent to his serious medical needs when he saw Theriot at around 1:00 A.M. on July 1, 2015 – before Theriot collapsed on the floor at 2:30 A.M.  DeFreitas asserts that Theriot's Eighth Amendment claim fails to satisfy the objective and subjective requirements of the deliberate indifference claim.  The undersigned agrees.

First, Theriot fails to establish a genuine issue of fact regarding the objective component of his claim.  To fulfill the objective requirement, the Plaintiff's condition would have to have been sufficiently obvious such that even a layperson would have reasonably been able to perceive the need for medical care.  *Blackmore*, 390 F.3d at

11

899; *see, e.g., Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017) (holding that "if a plaintiff has been stabbed" they would fall under the obvious category).  In cases where the risk of injury is non-obvious and the harm is a result of delayed treatment, the objective component will be satisfied when plaintiffs "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742.

Here, Theriot Eighth Amendment claim fits within the non-obvious injury analysis since his pain was internal and not based on a visible condition.  (ECF 51-1, PageID.290.)  A careful review of the record shows that Theriot failed to place any "verifying medical evidence" into the record that establishes that DeFreitas's treatment caused "detrimental effect[s]."  *Napier*, 238 F.3d at 742.  Because no verifying evidence exists in the record, it is the opinion of the undersigned that no genuine issue of fact exists that Theriot failed to satisfy the objective component of his deliberate indifference claim against DeFreitas.

The undersigned reaches the same conclusion with respect to the subjective component of Theriot's claim against DeFreitas.  Errors in medical judgment or behavior do not constitute deliberate indifference.  *Rhinehart*, 894 F.3d at 738.  To satisfy the subjective component of the test the "plaintiff must show that each defendant acted with a mental state equivalent to criminal recklessness."  *Id.* (internal citations omitted).  Further, in cases of medical care, plaintiff must demonstrate that any care given was so woefully inadequate that it constitutes no care at all.  *Miller*, 408 F.3d at 819.

Here, the record is clear that DeFreitas made efforts to treat Theriot's back pain and gave him options for what to do if the pain continued. (*See* ECF No. 51-1, PageID.289-290.)  On July 1, 2015 at about 1:00 A.M., DeFreitas received a phone call from Theriot because Theriot was suffering from back pain.  DeFreitas acted by telling him to continue taking over-the-counter pain medications, using a heating compress, and to filling out a medical kite if there was further pain.  (*Id.*, PageID.290.) A portion of DeFreitas's affidavit is shown below.

> 6.     During that call, Plaintiff complained of back pain.  He informed me he hurt his back lifting weights.
>
> 7.     I told Plaintiff that, as a nurse, I could not prescribe him anything other than over-the-counter medications.  I told him to take over-the-counter pain medication and to use a warm compress to ease the pain in his muscles.
>
> 8.     I told Plaintiff to submit a healthcare kite if his pain worsened, per policy.

(*Id.*)

Moreover, DeFreitas explained to Theriot that he *could not* prescribe anything stronger than over-the-counter medication because he was a nurse and not a doctor. (*Id.*)  Theriot admitted this point in his deposition, a portion of which is shown below.

```
18        Q.  Okay.  And then did he specifically tell you that
19   he wasn't a doctor so he couldn't -- he couldn't do
20   anything in that moment?
21        A.  Yeah, he informed me that he wasn't authorized to
22   give any treatment and that I would have to fill out a
23   health care kite, I would have to fill out a health care
24   kite and he wasn't authorized, he's not a doctor, he's
25   not -- he can't do anything and basically that I
```

(ECF No. 51-6, PageID.317.)

Furthermore, here, Theriot received some medical care from DeFrietas; he simply complains that this care was inadequate.  As noted above, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake*, 537 F.2d at 860 n.5.  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

Because the record shows that DeFreitas treated Theriot to the extent he was able, the undersigned cannot conclude that DeFreitas had a mental state equivalent to "criminal recklessness."  *Rhinehart*, 894 F.3d at 738.

14

It is the opinion of the undersigned that no genuine issue of material fact exists relating to Theriot's deliberate indifference claim against Nurse DeFreitas.[4]

## VII.   Theriot's Deliberate Indifference Claim Against Defendant Beaulieu

Theriot's claim against Beaulieu is a closer call.  Theriot alleges that Beaulieu was deliberately indifferent to his serious medical needs when Beaulieu found Theriot on the floor at around 2:30 A.M. on July 1, 2015, and then failed to provide adequate care.  Beaulieu asserts that this claim fails to meet the objective and subjective requirements.  The undersigned concludes that a genuine issue of material fact exists regarding the objecting component of Theriot's claim, but not as to the subjective component.

Regarding the objective component, the parties disagree as to whether Theriot's injury triggered the obvious-to-a-layperson standard from *Blackmore.*, 390 F.3d at 899, and, relatedly, whether Theriot needed to place verifying medical evidence in the record pursuant to *Napier*, 238 F.3d at 742.  Theriot appears to believe that the obvious-to-a-layperson standard applies because Beaulieu knew of his symptoms and saw that he was immobile on the floor.  (*See* ECF No. 56, PageID.410-411.)  Defendants assert that Beaulieu was unaware that Theriot was suffering from

---

[4]      Theriot also appears to argue that DeFreitas was deliberately indifferent toward him because DeFreitas allegedly "subjected him to ridicule" by blaming his weightlifting activities for his injury.  (ECF No. 56, PageID.413.)  However, this Court already ruled that any comments DeFreitas may have made concerning weightlifting being the source of the injury are not indicative of deliberate indifference.  (ECF No. 12, PageID.131.)

any *serious* medical condition, and that Beaulieu was only aware that Theriot was in pain. (ECF No. 51, PageID.280.)

In *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017), the court of appeals held that plaintiffs must place verifying evidence into the record unless the "need for medical care was so obvious that even a layperson should recognize it." For reference, the court explained that "if a plaintiff has been stabbed, for instance, he should not require a doctor's diagnosis of internal bleeding before prison staff should be expected to tend to his medical needs." *Id.* In doing so, the court rejected Mattox's "'obvious malady' theory," which is based on Mattox's heart attack symptoms being sufficiently obvious to demonstrate a substantial risk. *Id.*

In Theriot's affidavit, he attests that he informed Beaulieu of his pain and immobility and that Beaulieu refused to permit Theriot access to medical care. (ECF No. 56-6, PageID.437.) The affidavits Theriot submitted confirm that Theriot was laying on the floor in considerable pain. (*See* ECF No. 56-1, PageID.427 (affidavit of Timothy Lewis-El); ECF No. 56-2, PageID.429 (affidavit of William Brooks); ECF No. 56-3, PageID.432 (affidavit of Jesse Hayes); ECF No. 56-4, PageID.434 (affidavit of Moses Kirschke).)

Giving these statements regarding Theriot's condition when Beaulieu found him, the undersigned concludes that a genuine issue of fact exists regarding the objective component of the deliberate indifference claim.

The undersigned, however, concludes that no genuine issue of material fact exists regarding the subjective component. To satisfy the subjective component,

16

Theriot must demonstrate that Beaulieu "acted with a mental state equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738. That demonstration is made by placing evidence into the record to show that Beaulieu was aware of the well-documented risk of harm and that Beaulieu recklessly ignored the risk. *Id.*

In Beaulieu's affidavit, he says that he found Theriot laying on the floor in pain when he arrived on the scene. (ECF No. 51-3, PageID.295-97.) He says that housing staff told him that Theriot "injured himself [while] lifting weights." (*Id.*, PageID.296.) And he says that he called healthcare while Theriot was still on the floor. (*Id.*) Beaulieu says he spoke to "Nurse Russell" – presumably Russell DeFreitas. DeFreitas's affidavit confirms that he received a call from the housing unit a few hours after he saw Theriot. (ECF No. 51-1, PageID.290.) According to Beaulieu, DeFreitas explained (1) that Theriot was already seen by medical care, (2) that there was nothing further DeFreitas could do, (3) and that Theriot was told to complete a medical request if he needed further medical treatment. (*Id.*)

Theriot does not argue that Beaulieu did not speak to DeFreitas. He says that this conversation did not take place in his presence.[5] (ECF No. 56-6, PageID.437.) Instead, he argues that Beaulieu should have sought immediate medical attention. In support of that argument, Theriot again directs the Court's attention to his affidavit and the affidavits of his fellow inmates that were present.

---

[5]      In his affidavit, Theriot says that Beaulieu did not call healthcare while in his presence. (ECF No. 56-6, PageID.437.)

The facts here show that Beaulieu consulted healthcare and was informed that Theriot had already been seen by medical staff, who provided Theriot advice on self-care.   Of course, Beaulieu could have ignored the information he received from DeFreitas and transported Theriot to healthcare again.   But his failure to do so does not rise to the level of criminal recklessness.   Theriot and Beaulieu simply differ on what Beaulieu should have done at the time – and indirectly, what healthcare should have told Beaulieu to do.   But, as noted above, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.   *Sanderfer*, 62 F.3d at 154-55.   This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.   *Gabehart*, 1997 WL 160322, at *2.

Accordingly, the undersigned concludes that there is no genuine issue of fact regarding the subjective component of Theriot's Eighth Amendment deliberate indifference claim.

## VIII.  Theriot's Claim Against Defendants McGuire and Lawson

It is undisputed that McGuire and Lawson were the prison officials tasked with driving Theriot to the hospital.   (*See* ECF No. 51-4, PageID.299-300; ECF No. 56-6, PageID.438.)   Theriot alleges that they violated his Eighth Amendment rights by taking a route to the hospital that added fifteen minutes to the trip.   (ECF No. 56-6, PageID.437.)   Defendants assert that they are entitled to summary judgment because Theriot failed to satisfy the objective and subjective requirements of his Eighth Amendment deliberate indifference claims.   The undersigned agrees.

The undersigned begins with some initial points regarding this claim.  First, the undersigned recognizes that a CO's decision to drive a prisoner to the hospital via a longer route for personal reasons is troubling.  This behavior would expose the CO to a claim that he or she misused government property.

Here, the record before the Court does not create a genuine issue of material fact regarding the COs' actions.  McGuire attests that they did not take a longer route to the hospital.  In McGuire's affidavit, a portion of which is shown below, he says that the route taken was "one of the regular routes" and that the drive to the hospital took about thirty minutes.

> 6.      There are several routes officers take when transporting inmates to WMH, all of them take roughly thirty minutes.
>
> 7.      On that date, we took one of the regular routes.  It took approximately thirty minutes to get to WMH from KCF.

(ECF No. 51-4, PageID.300.)

In Theriot's affidavit – a portion of which is shown below – he attests that McGuire and Lawson took a protracted route to the hospital because they wished to look at a "property item."

> 16.) I believe officer McGuire route & delay to hospital was influeneedd by him & c/o Lawson both wanting to see & discuss some property item that was near some intersection & open land/field that was "for sale", McGuire & Lawson discussed the property before & after we drove past it.

(ECF No. 56-6, PageID.438.)

19

Theriot's affidavit does not establish a basis for his personal knowledge that the route taken was longer.  Theriot's bald assertion that the route was longer is not enough to create a genuine issue of material fact.

But even if the Court accepted that a genuine issue of fact existed with regard to the route the COs drove to the hospital, Theriot has not alleged facts that establish a genuine issue of material facts as to his deliberate indifference claim.  Obviously, McGuire and Lawson were told to take Theriot to the hospital.  Because Theriot's claims against McGuire and Lawson are based on delay, he is required to place verifying medical evidence into the record that shows he suffered a detrimental effect because of the delay McGuire and Lawson caused.  *See Napier*, 238 F.3d at 742.  The record is devoid of any such verifying evidence.  Consequently, the undersigned concludes there is no genuine issue of fact that Theriot failed to satisfy the objective component.

To satisfy the subjective component, Defendants must be shown to have a "mental state equivalent to criminal recklessness."  *Rhinehart*, 894 F.3d at 738.  Theriot could do so by placing evidence into the record to show that McGuire and Lawson were aware of the well-documented risk of harm and that McGuire and Lawson recklessly ignored the risk.  *Id*.  A careful review of the record shows that Theriot has failed to do so.

## IX.  Qualified Immunity

As an alternative argument, Defendants move to dismiss Theriot's claims by asserting qualified immunity from liability.  "Under the doctrine of qualified

immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second step.  As the Supreme Court has observed,

"this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."   *White v. Pauly*,137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552).  Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

For reasons elaborated in Sections VI-VIII, Theriot has failed to establish that Defendants in this case violated a clearly constitutionally established right. Therefore, the undersigned concludes that the remaining Defendants are entitled to qualified immunity.

## X.      Conclusion and Recommendation

It is obvious that Theriot experienced a significant and painful medical condition.  It is also obvious that the Defendants' response to this condition was not as rapid as possible and could even be characterized as slow.  But the slow response here is not sufficient to establish a violation of Theriot's constitutional rights.

The undersigned respectfully recommends that this Court (1) grant Defendants' motion for summary judgment, and (2) dismiss the remaining claims

against the unserved defendants without prejudice.  If the Court accepts this recommendation, the case will be dismissed.

Dated:  August 14, 2020                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).