UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DARIUS THERIOT #778606,

    Plaintiff,                                                                    Case No. 2:18-CV-102

v.                                                                                 HON. GORDON J. QUIST

DUNCAN MACLAREN, et al.,

    Defendants.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Darius Theriot pursuant to 42 U.S.C. § 1983. Theriot alleges that Defendants Russell DeFreitas, Dale Beaulieu, Wayne McGuire, and M. Lawson were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. On August 14, 2020, U.S. Magistrate Judge Maarten Vermaat issued a Report and Recommendation (R & R), recommending that the Court grant Defendants' motion for summary judgment and dismiss the unserved "unknown corrections officer" defendants pursuant to Fed. R. Civ. P. 4(m). (ECF No. 69.) Theriot has filed objections. (ECF No. 70.)

Upon receiving an objection to the R & R, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). After conducting a de novo review of the R & R, the objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted.

Theriot first objects to the magistrate judge's recommendation to grant DeFreitas summary judgment. DeFreitas is a registered nurse who previously worked at Kinross Correctional Facility. The magistrate judge found that Theriot did not satisfy the objective or subjective prong of his deliberate indifference claim against DeFreitas. The Court will focus on the subjective prong. Theriot argues that the magistrate judge erred because DeFreitas could have and should have done more to treat Theriot.

The record establishes that, at some point late in the evening on June 30, 2015, or in the early morning of July 1, 2015, Theriot spoke to DeFreitas by telephone and told him that he injured his back lifting weights and was experiencing back pain. Theriot asked for a muscle relaxant. Theriot alleges that DeFreitas questioned the amount of pain Theriot was in and blamed Theriot for injuring himself. DeFreitas responded that "he wasn't authorized to give any treatment" and told Theriot to continue taking over-the-counter pain medication, use a warm compress, take a hot shower, and kite if the pain worsened. (ECF No. 70 at PageID.518.) Theriot cites the MDOC policy to show that there were "many things [DeFreitas] could have done" in an urgent health situation. (*Id.*) Over the next couple of hours, Theriot's condition worsened. Another corrections officer called DeFreitas and told him that Theriot's pain worsened and that he may have taken too much pain medication. DeFreitas reiterated his treatment instructions. Shortly thereafter, Theriot went to the bathroom and collapsed on the floor in the hallway. DeFreitas was notified of Theriot's condition but still did not provide any additional treatment. At approximately 7:00 a.m., Theriot was transported to healthcare to be seen by another healthcare professional. Theriot was subsequently diagnosed with traumatic rhabdomyolysis.

Despite Theriot's disagreement regarding some of the magistrate judge's findings (specifically the timing of the phone calls to DeFreitas), his claim against DeFreitas amounts to a

disagreement in treatment plan. Theriot said he hurt his back lifting weights and asked for a muscle relaxant. DeFreitas did not think the weightlifting injury was particularly serious and told Theriot to keep taking over-the-counter pain medication, use a warm compress, and kite if the pain worsened. The pain worsened and DeFreitas did not alter his treatment instructions. Theriot was forced to wait several hours before he received any new treatment. Should DeFreitas have realized that Theriot, who has a history of chronic back pain, was suffering from more than a minor weightlifting injury? Maybe. Should he have realized that Theriot's medical situation was much more of an emergency that required immediate intervention? Maybe. It is troubling that Defendant DeFreitas never physically examined Theriot and instead responded to Theriot's complaints by telephone. Nonetheless, DeFreitas acted at most negligently when he believed Theriot's weightlifting back injury was minor. DeFreitas' alleged conduct amounts to a disagreement in treatment and does not rise to the level of a constitutional violation.

Theriot next objects to the magistrate judge's recommendation to grant Beaulieu summary judgment. Beaulieu was one the individuals that responded to Theriot when he was collapsed on the hallway floor in the middle of the night. The magistrate judge found that Theriot did not satisfy the subjective prong of his deliberate indifference claims against Beaulieu.

Theriot's description of Beaulieu's conduct is troubling. He showed no concern for Theriot's condition, ordered him to get back to his cell, and threatened him with a misconduct. The critical dispute is whether Beaulieu consulted with healthcare regarding Theriot's medical condition. In his affidavit, Beaulieu states: "I made a call to healthcare and spoke with Nurse Russell [DeFreitas], whom informed me that he could not do anything for [Theriot] at that moment, that he had already advised [Theriot] to take over-the-counter pain medication, and that [Theriot] had been instructed to fill out a medical request if he needed more assistance." (ECF No. 51-3 at

3

PageID.296.)  DeFreitas confirms that he received a call from officers who found Theriot on the floor. DeFreitas told the officers that he spoke with Theriot earlier and advised him to take over-the-counter pain medication and use a warm compression. (ECF No. 51-1 at PageID.290.) Because Beaulieu contacted DeFreitas and was informed of Theriot's medical condition by a health professional, Beaulieu did act deliberately indifferent when he told Theriot that he could not remain lying on the floor.  *See McGaw v. Sevier Cnty. Tennessee*, 715 F. App'x 495, 498-99 (6th Cir. 2017) ("Where, as here, an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice.").

Theriot argues that Beaulieu never called healthcare.  He states that he did not hear any call being made. However, the fact that Theriot did not hear the phone call does not create a genuine issue of material fact. Theriot also argues that there is no evidence of a call in the unit logbook and healthcare phone logbook. But Theriot concedes that the healthcare phone logbook "is inaccurate and does not even show/reflect all the calls received regarding this incident." (ECF No. 56-6 at PageID.437.)  Similarly, the unit logbook is not a phone log and does not show each phone call. Accordingly, the Court finds that Theriot has not shown that there a genuine issue of material fact. Instead, the evidence establishes that Beulieu contacted healthcare and was informed by DeFreitas that Theriot needed to take over-the-counter pain medication and use a warm compress.  Because Beaulieu contacted healthcare and followed healthcare's instructions regarding Theriot's medical condition, Theriot does not show that Beaulieu "acted with a mental state equivalent to criminal recklessness." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018).

4

Theriot finally objects to the magistrate judge's recommendation to grant McGuire and Lawson summary judgment.  McGuire and Lawson are corrections officers who were responsible for driving Theriot to the hospital.  Theriot contends that McGuire and Lawson were deliberately indifferent to his serious medical needs when they took a different route to the hospital that was longer than the usual route. The magistrate judge found that Theriot did not establish a basis for his personal knowledge that the route taken was longer. The magistrate judge also found that Theriot failed to satisfy the objective and subjective prong of his deliberate indifference claim.

The evidence establishes that the trip to the hospital generally takes "approximately thirty minutes."  (ECF No. 51-4 at PageID.300.)   The evidence further establishes that there are numerous routes to the hospital. Theriot argues that, although he initially stated in his response brief that the trip to the hospital took longer than 30 minutes, he wrote in his verified complaint that the trip took "approximately 47 minutes, which was longer than needed and not the most direct route." (ECF No. 68 at PageID.484.)  In his affidavit, Theriot states that the officers drove slower than needed. Theriot further "believe[s]" the "route and delay to [the] hospital was influenced by [Defendants] wanting to see and discuss some property" for sale. (ECF No. 56-6 at PageID.438.) Theriot's belief does not establish that McGuire and Lawson took a different route to hospital.  The Court agrees that "Theriot's bald assertion that the route was longer is not enough to create a genuine issue of material fact."  (ECF No. 69 at PageID.510.) In the Court's view, Theriot has not shown an issue of material fact exists as to whether McGuire and Lawson acted with the requisite state of mind to satisfy the subjective prong of his deliberate indifference claim.

**Accordingly, IT IS HEREBY ORDERED** that the August 14, 2020, Report and Recommendation (ECF No. 69) is **adopted** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment (ECF No. 50) is **granted**. Theriot's Eighth Amendment claims against Defendants DeFreitas, Beaulieu, McGuire, and Lawson are **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Theriot's claims against the unserved unknown defendants (Unknown Part(y)(ies) #1, #2, and #3) are **dismissed without prejudice** pursuant to Fed. R. Civ. P. 4(m).

This case is concluded.

A separate judgment will enter.


Dated: May 12, 2021                                     /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE